Terry Lynn Morano ALESHIRE,
Plaintiff-Appellee,

v.

Stephen Legrand ALESHIRE,
Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section.

Dec. 29, 1981.

Affirmed by Supreme Court
Nov. 22, 1982.

W. Harold Bigham, Gullett, Sanford & Robinson, Nashville, for plaintiff-appellee.

*Charles P. Jackson, III,* Hollins, Wagster & Yarbrough, Nashville, for defendant-appellant.

## OPINION

LEWIS, *Judge.*

Plaintiff, on February 7, 1980, filed her complaint against defendant seeking an absolute divorce and "alimony *in solido,* or in such other form as the Court may find just, and attorneys fees."

Defendant answered, denying all material allegations of the complaint.

After a bench trial a decree was entered, the pertinent parts of which are as follows:

(1) The Plaintiff is granted an absolute divorce on the statutory ground of cruel and inhuman treatment.

(3) The present value of Defendant's probable future earning capacity as a licensed medical doctor should be treated as part of his estate as contemplated by T.C.A. § 36–821.

(4) The Plaintiff is awarded alimony *in solido* in the amount of $50,000.00 as the portion of the present value of Defendant's future earning capacity to which she is entitled, for all of which she is hereby granted a judgment. The schedule [1] for payment of the judgment for alimony *in solido* is set out in the Memorandum Opinion of the Court.

The pertinent facts are as follows:

Plaintiff and defendant were married August 2, 1975. No children were born of the marriage. The parties were separated in November, 1979, and the decree granting plaintiff a divorce was entered on February 11, 1981.

Plaintiff completed her studies leading to a Bachelor of Science in Home Economics with an option in Human Nutrition and Foods at Virginia Polytechnic Institute in March, 1975, and received her degree in June, 1975.

When plaintiff and defendant first met, defendant was pursuing an engineering degree at the University of Virginia. Defendant at that time had no intention of attending medical school. During defendant's third year in college, after he had transferred to Virginia Polytechnic Institute, he decided to pursue a medical degree. He entered the Medical College of Virginia at Richmond, Virginia, in 1975, and received his medical degree in 1979, after completing four consecutive academic years.

| 1. Date | Amount | Date | Amount |
|---|---|---|---|
| March 1, 1981 | $ 1,000.00 | March 1, 1984 | $ 5,000.00 |
| September 1, 1981 | 1,000.00 | September 1, 1984 | 5,000.00 |
| March 1, 1982 | 1,500.00 | March 1, 1985 | 10,000.00 |
| September 1, 1982 | 1,500.00 | September 1, 1985 | 10,000.00 |
| March 1, 1983 | 2,500.00 | March 1, 1986 | 10,000.00 |
| September 1, 1983 | 2,500.00 | Total | $50,000.00 |

Prior to the parties marriage but after they had decided to marry, plaintiff went to Richmond, Virginia, to look for employment. She began work in May, 1975, as an assistant manager with the Marriott Corporation in a restaurant operated by Marriott for the Medical College of Virginia. After approximately one and a half years, she was promoted to manager of the restaurant. Plaintiff testified that she would not have taken this employment but for the fact that she and defendant were to be married and defendant was to be attending the Medical College of Virginia.

Plaintiff received wages from Marriott Corporation in 1975 of $5920, 1976 $10,197, 1977 $12,286, 1978 $13,837, and in 1979 $7716, for a total of $49,956.00.

Plaintiff had assets totaling $11,800 on August 2, 1975, which she brought to the marriage. Defendant testified that he brought a total of $3000 to the marriage, that he had total earnings while he was in medical school of $11,250, and that he received gifts from his father of approximately $3000.

All moneys received by plaintiff and defendant during the course of their marriage were deposited in a joint bank account with plaintiff writing most, if not all, of the checks and handling most, if not all, of the parties' business.

The total tuition for defendant's medical education was approximately $8000, $5100 of which was paid by scholarships, leaving a balance of $2900 paid out of the parties' joint account. This did not include books and supplies.

While the parties lived in Richmond, plaintiff attended college in addition to her employment and in June, 1979, received her Master of Science in Home Economics with an option in Human Nutrition and Food. She was reimbursed her educational expense by her employer.

After defendant received his medical degree, the parties, after visiting several schools, decided to come to Vanderbilt for defendant's internship and residency in pathology where he is presently in the second year of a five-year program. Plaintiff secured a teaching position at Middle Tennessee State University in Murfreesboro at an annual salary of $12,600.

After the parties separated, plaintiff took a position at the University of Delaware as an Assistant Professor, teaching Institutional Management in Quality Food Production and Dietetics at an annual salary of $15,000.

At the time of the divorce, defendant's annual salary as a Pathology Resident was $14,551.92.

When plaintiff and defendant separated, the property acquired by the parties during their marriage was voluntarily divided with plaintiff receiving assets with a value in excess of $32,000, which included a Volkswagen automobile, a $10,000 Merrill-Lynch account, a $10,000 U.S. Treasury bill, an IRA account, ITT stock, and some other miscellaneous items. Defendant received $1000 and a few pieces of furniture.

The record shows that at the time of the divorce defendant had no tangible property out of which alimony could be awarded. Plaintiff sought and was awarded alimony *in solido* based on defendant's expected earning capacity as a medical doctor.

The issue raised by defendant on appeal is whether plaintiff is entitled to alimony and, if so, may an alimony *in solido* award be based on an expectation of future earnings.

While alimony was originally allowed in recognition of the husband's common law liability to support the wife, *Rush v. Rush*, 33 Tenn.App. 496, 503, 232 S.W.2d 333, 336 (1949), if it is to be awarded in the instant case it must be pursuant to T.C.A. § 36–820 (periodic or alimony *in futuro*) or T.C.A. § 36–821 (alimony *in solido*).

T.C.A. § 36–820 provides that upon the dissolution of the marriage or a court decreed separation,

the court may make an order and decree for the suitable support and maintenance of the complainant by the respondent, or out of his or her property, ... according to the nature of the case and the circum-

stances of the parties, the order or decree to remain in the court's control; and, on application of either party, the court may decree an increase or decrease of such allowance on cause being shown.

T.C.A. § 36–821 provides that upon dissolution of the marriage or a court decreed separation, the court may award as alimony "such part of the other spouse's real and personal estate as it may think proper."

The record is clear, and it is conceded by plaintiff in her brief, "that the Defendant does not have, in possession, tangible property for distribution." Plaintiff insists, however, that she should be allowed alimony *in solido* from defendant's "very large earning capacity." In essence, she argues that his earning capacity brought about by the medical degree and medical license is property out of which alimony *in solido* can be awarded.

The Trial Judge was persuaded by this contention and, in his Memorandum Opinion, stated:

It is the opinion of this court that the present case is an appropriate one in which to decree to the wife a sum of money payable in installments. [Plaintiff] provided money and moral support to help [defendant] become a medical doctor. She looked forward to the time when she could enjoy the benefits, financial and otherwise, of a physician's wife. Now, through no fault of her own, she has been forced to abandon that goal in order to preserve her dignity and self respect.

[Defendant], on the other hand, is at the brink of a financially rewarding professional career.

There are also some mitigating facts in the case. The marriage lasted less than five years. Plaintiff is young, personable and intelligent. She, too, has a respectable future earing [sic] capacity and the prospect of a good life. And the defendant's estimated future earning capacity is based, in part, on an uncertain life expectancy.

■ If defendant completes his residency in pathology, he does have an expectation of very high earnings; and even if he should not complete his residency, he could, as a general practitioner, have an expectation of high earnings. In either event, he has only an expectation. He could be injured in an accident and be unable to practice medicine. He could be struck down with a serious illness and be unable to practice medicine. He has no guaranteed life expectancy. He could decide that his calling is not in private practice or in academics but as a medical missionary and have little or no income. Granted, these are only possibilities which probably will not occur but each is a possibility. When an award of alimony *in solido* is made and the decree becomes final it may not be modified. The sum awarded is payable in full regardless of future events such as the death of the husband or the remarriage of the wife. *Spalding v. Spalding,* 597 S.W.2d 739, 741 (Tenn. App.1980).

On the other hand, T.C.A. § 36–820 provides for *in futuro* or periodic alimony and the court may decree an increase or decrease of the alimony as the circumstances of the parties change. *Phillips v. Webster,* 611 S.W.2d 591 (Tenn.App.1980).

Plaintiff cites *Phillips* and *Spalding* in support of her argument that she should be allowed alimony *in solido* payable in installments out of the future earnings of defendant. Neither *Phillips* nor *Spalding* dealt with the question of whether or not alimony *in solido* could be awarded out of future earnings. The issue in each of those cases was whether or not the award by the trial court was *in solido* or *in futuro.* This Court, in each case, held that there had been an award of alimony *in solido* payable in installments which had become final and, therefore, the Trial Court could not modify the award. No issue was before the Court in either case concerning whether the *in solido* award was payable out of future earnings or out of the present estate of the defendant. Plaintiff's reliance upon *Phillips* and *Spalding* is misplaced.

■ The Trial Judge relied heavily on *Colvert v. Colvert,* 568 P.2d 623 (Okl.1977),

in deciding that defendant's future earnings should be considered a part of his estate in awarding alimony *in solido.* However, in a later Oklahoma case, *Hubbard v. Hubbard,* 603 P.2d 747, 752 (Okl.1979), the Court stated:

> Our holding in [*Colvert v. Colvert*] should not be read to mean that a court can consider the future earnings of a spouse in setting the amount of alimony, then designate the alimony payments based on future income as property division alimony. Insofar as *Colvert, supra,* appears to stand for that proposition, it is overruled.

We are also of the opinion that the Trial Court's reliance on *Winslow v. Winslow,* 133 Tenn. 663, 182 S.W. 241 (1915); *Walden v. Walden,* 13 Tenn.App. 337 (1930), and other cases decided before 1949 is misplaced. Prior to the enactment by the Tennessee General Assembly of Chapter 53, Public Acts of 1949, there was no statutory authority for alimony *in futuro.* In the pre-1949 Tennessee cases cited by the Trial Judge and by plaintiff in her brief, the circumstances were that the present estate of the husband was not adequate to provide for the wife. The court in those cases, to meet the equities of the situation, took into consideration future earnings of the husband.

However, as we have heretofore stated, if alimony is to be awarded in this case it must be pursuant to T.C.A. § 36–820 or § 36–821. The legislature has provided, pursuant to T.C.A. § 36–820, a means for awarding alimony *in futuro* and also provided that the court retain jurisdiction to either increase or decrease the amount of alimony *in futuro.* T.C.A. § 36–821 provides for alimony *in solido* to be paid out of the present estate of the spouse and does not, in our opinion, contemplate the consideration of an expectation of earnings as a part of that present estate.

We are of the opinion that alimony *in solido* should not be awarded out of an expectation of future earnings. In cases appropriate for the awarding of alimony and where the defendant does not have an estate out of which to award alimony *in solido,* the court should award periodic or alimony *in futuro* pursuant to T.C.A. § 36–820. The award then can be increased or decreased as the circumstances of the parties may warrant.

We do not hold that in no event may alimony *in solido* be awarded from future earnings. Extreme circumstances could arise where it might be necessary to do so. Illustrative of those circumstances, but not all inclusive, is a situation where a spouse intentionally disposed of his or her tangible assets in order to deprive the other spouse of alimony *in solido* or where it could be shown that a spouse entered into the marriage solely to have his or her spouse work and provide him or her with an education. However, it is not even remotely suggested that there are extreme circumstances in the instant case.

We next consider whether plaintiff is entitled to alimony *in futuro.*

■ Alimony is an allowance for the sustenance of a spouse after a legal separation or divorce. *White v. Bates,* 89 Tenn. 570, 15 S.W. 651 (1891); *Livingston v. Livingston,* 58 Tenn.App. 271, 429 S.W.2d 452 (1967).

> Factors to be considered in fixing the amount of alimony are the earning capacity of each of the parties, their separate property holdings, their condition of health, age and station in life, the way and manner in which the estate has been created, including, as said, the contributions made by the wife from her earnings and the merit or lack of merit of the respective parties. [Citations omitted.]

*Stone v. Stone,* 56 Tenn.App. 607, 615, 409 S.W.2d 388, 392 (1966).

■ The needs of the spouse obtaining the divorce and the ability of the other to pay are the dominant factors to consider in awarding alimony in most cases. *Garrett, Divorce, Alimony & Child Support* § 12–4 at 115 (1978).

■ In the instant case we are of the opinion that plaintiff does not meet the criteria for the awarding of alimony to her either *in futuro* or *in solido.* The record

amply supports the Trial Judge's finding that plaintiff "is young, personable and intelligent. She, too, has a respectable future earning capacity and the prospects of a good life." Plaintiff has not established a need for alimony or the present ability of defendant to pay alimony. At the time of their separation, the parties agreed between themselves as to how their joint property should be divided. Plaintiff, as a result of that agreement, received some $32,800 (approximately ninety five percent) of the joint property of the parties. Defendant received $1000 in cash and some furniture. When the divorce was heard, plaintiff was employed as an Assistant Professor at the University of Delaware with an annual salary of $15,000. The record shows no unusual expenses on her behalf. At the time of trial, defendant had an income of $14,551.92 and his personal estate was meager at best.

■ Defendant also complains that the attorneys fees awarded by the Trial Court as alimony *in solido* is excessive.

> Ordinarily, if the wife is financially able to procure counsel, there is no occasion for fixing the amount of her counsel's fee which should be a matter of contract between attorney and client.

*Ligon v. Ligon,* 556 S.W.2d 763, 768 (Tenn. App.1977).

As a result of the voluntary division of the parties' jointly owned property, plaintiff has assets which have a value in excess of $32,000. Included in those assets are a Merrill-Lynch ready assets account of approximately $9600 and a United States Treasury Bill of $10,000.

After a full and complete consideration of this record, including both plaintiff's and defendant's present finances and our determination that the record reflects a relatively simple, straight forward divorce case (especially in view of the fact that the parties voluntarily divided their tangible assets), except for the fact that plaintiff sought alimony *in solido* from defendant's expected future earnings, we are of the opinion that the amount awarded to plaintiff as attorneys fees is excessive and should be modified to the sum of $2500.

Plaintiff seeks to have this Court hold that defendant's "right to practice medicine, evidenced by his degrees, certificates of completion, and license ... is *property* susceptible of adjustment and adjudication within the meaning of T.C.A. § 36–825."

T.C.A. § 36–825 provides, in pertinent part, as follows:

> In all actions for divorce or separate support and maintenance, the court having jurisdiction thereof may, in its discretion, adjust and adjudicate the respective rights and interests of the parties in all jointly owned property, so as to preserve for each or either party, that portion of such jointly owned property as may be just and reasonable under the facts and circumstances of the case, . . . .

■ A division of jointly owned property pursuant to T.C.A. § 36–825 is not alimony. *Langford v. Langford,* 220 Tenn. 600, 421 S.W.2d 632 (1967).

■ Plaintiff, in her complaint, sought "an absolute divorce" and alimony, either "*in solido* or in such other form as the Court may find just, and attorneys fees." She did not seek a division of the parties' jointly owned property pursuant to T.C.A. § 36–825.

Neither party raised the issue that plaintiff was entitled to a division of jointly owned property in their pleadings or at trial. The Trial Judge did not address this issue.

This Court will not consider an issue which was neither raised nor considered in the trial court.

The instant case is not in the posture of a case in which issues were properly raised and pretermitted by the trial judge. In that instance, this Court may exercise its appellate jurisdiction and rule—even if on appeal neither party has raised the issue. Rule 13(b), TRAP. This issue is not properly before this Court and will not be considered.

It results that the judgment of the Trial Court in awarding alimony *in solido* in the

735

sum of $50,000 is reversed and the judgment of the Trial Court in awarding an additional $7000 as alimony *in solido* for plaintiff's counsel is modified to the sum of $2500.

In all other respects the judgment of the Trial Court is affirmed. Costs are assessed equally to plaintiff and defendant and the cause remanded to the Trial Court for the collection of costs and any further necessary proceedings.

CANTRELL and CONNER, JJ., concur.