**Gloria Jean Farrell HOUGHLAND, Plaintiff/Appellee,**

v.

**Calvin HOUGHLAND, Jr., Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section, at Nashville.

May 29, 1992.

Application for Permission to Appeal Denied by Supreme Court Oct. 26, 1992.

620

Harlan Dodson, III, Lucinda E. Smith, Nashville, for defendant/appellant.

Robert L. Jackson, David W. Garrett, Nashville, for plaintiff/appellee.

FARMER, Judge.

Calvin Houghland, Jr., appeals from the final decree of the trial court ordering him, *inter alia,* to pay to his wife, Gloria Jean Farrell Houghland, $83,479.71 as alimony *in solido,* to pay part of Wife's attorney's fees in the amount of $8,000.00, and to hold Wife harmless from certain joint obligations of the parties.

The parties were married in June 1976 and divorced in June 1991. The trial court awarded Wife a divorce upon the grounds of cruel and inhuman treatment.

The issues on appeal as presented by the appellant are:

I. The trial court erred in awarding $83,479.71 as alimony *in solido* when Mr. Houghland had no estate and the record establishes neither Mrs. Houghland's need nor Mr. Houghland's ability to pay.

    A. The trial court erred in awarding alimony *in solido* when Mr. Houghland had no estate.

    B. There is not a legal, or factual, basis for the award of alimony *in solido.*

    C. The trial court failed to consider the statutory factors in awarding alimony.

II. The trial court erred in ordering Mr. Houghland to pay attorney's fees for Mrs. Houghland

III. The trial court erred in ordering Mr. Houghland to hold Mrs. Houghland harmless from joint obligations.

    A. The trial court erred in ordering Mr. Houghland to hold Mrs. Houghland harmless from a judgment against her of $425,000.00.

    B. Mr. Houghland should not be required to hold Mrs. Houghland harmless from a judgment for maintenance fees for a condominium which the court awarded to Mrs. Houghland.

    C. Mr. Houghland should not be required to hold Mrs. Houghland harmless from a judgment for a deficiency for a condominium which was foreclosed.

IV. The trial court's order that Mr. Houghland hold Mrs. Houghland harmless for indebtedness discharged in bankruptcy is void.

Also, Wife requests an additional award of attorney's fees on appeal.

### The Award of Alimony In Solido

The trial judge awarded the sum of $83,479.71 as alimony *in solido* to Wife "as a judgment against the Husband and necessary for her support and maintenance and that of the minor children."

The award of alimony is within the sound discretion of the trial court. *Rains v. Rains,* 58 Tenn.App. 214, 428 S.W.2d 650 (1968). T.C.A. § 36–5–101(d) delineates the factors to be considered by the trial court in awarding alimony. Of these factors, the courts have recognized that "the need of the spouse is the single most important factor followed by the ability of the obligor spouse to pay." *Campanali v. Campanali,* 695 S.W.2d 193, 197 (Tenn.App.1985). *Accord Cranford v. Cranford,* 772 S.W.2d 48, 50 (Tenn.App. 1989). These factors apply whether the court is making an award of alimony *in futuro* or alimony *in solido. Fisher v. Fisher,* 648 S.W.2d 244, 246–47 (Tenn. 1983). Where possible, awards of alimony *in solido* are preferred to awards *in futuro. Spalding v. Spalding,* 597 S.W.2d 739, 741 (Tenn.App.1980).

After review of this matter, we conclude that the trial judge did not abuse her discretion in finding that the award of alimony *in solido* was necessary for the support and maintenance of Wife. Regarding the statutory factors, the evidence at trial indicated that Wife earned a B.S. degree from the University of Tennessee at Knoxville in 1972. Throughout the marriage, Wife worked as a school teacher. At the time of trial, she was teaching marketing at Franklin High School and earning a net income of approximately $29,000.00 per year. She is the custodian of the parties'

two minor children and testified to expenses of $6,400.00 per month.

Husband earned an M.B.A. from Vanderbilt University. During the early years of the marriage, he worked as a vice president at Fleet Transport, and from 1982 to 1985 he was president of that company. After a brief stint as general manager of the petroleum transportation division of Leaseway, Husband became president and owner of a corporation known as Direct Transport. Although Husband had a total of 23 years experience in the tank truck industry, at the time of trial he had been unable to secure employment in that field and was working as a cleaning contractor. He predicted that he could earn approximately $2,000.00 per month from this employment. Husband also received net income of $1500.00 per month from a trust established by his father. Federal income tax returns for the years 1987, 1988, and 1989 indicated that Husband grossed $158,662.00 in wages, tips, and other compensation for the three years while Wife grossed $85,933.00. Despite Husband's business setbacks, he had demonstrated a higher earning capacity than Wife.

Although Husband had filed for bankruptcy and had virtually no assets at the time of trial, in the past Husband had access to large sums of money. During the marriage, which lasted 16 years, the parties enjoyed a relatively high standard of living. At the time of trial Wife was 39 years of age and Husband was 43. Both parties were in good health. The trial judge found that Wife had the lesser degree of fault in the breakup of the marriage.

Husband also appeals the award on the basis of this Court's holding in *Aleshire v. Aleshire*, 642 S.W.2d 729 (Tenn.App.1981), that alimony *in solido* should not be awarded out of an expectation of future earnings. In reversing the trial court's award of alimony *in solido*, which was based on the husband's expected earning capacity as a medical doctor, this Court stated that T.C.A. § 36–821 (now § 36–5–102) "provides for alimony *in solido* to be paid out of the present estate of the spouse

and does not ... contemplate the consideration of an expectation of earnings as a part of that present estate." 642 S.W.2d at 733. In *Hall v. Hall*, 772 S.W.2d 432 (Tenn.App.1989), on the other hand, this Court held that alimony *in solido* could be awarded from future earnings where the husband had a profit sharing interest in his employer's business which he valued at $20,000.00 to $30,000.00 per year. In affirming the award, the Court found that this interest constituted an "estate" from which alimony *in solido* might be awarded. 772 S.W.2d at 438.

In the present case, Husband argues that, because of his bankruptcy, he has no "estate" from which to award alimony *in solido*. In accordance with *Aleshire*, we agree that alimony *in solido* should not be awarded out of an expectation of future earnings. As previously noted, however, Husband receives $18,000 net income per year from a trust established by his father. Although Husband attempts to characterize the trust as revocable at the discretion of his father, Husband's citations to the record fail to support such an assertion. We conclude that Husband's interest in the trust is similar to the *Hall* husband's profit sharing interest in a business and, thus, constitutes an "estate" from which to award alimony *in solido*.

In addition, we note that the *Aleshire* court did not hold "that in no event may alimony *in solido* be awarded from future earnings." 642 S.W.2d at 733. Instead, the Court recognized that:

> Extreme circumstances could arise where it might be necessary to do so. Illustrative of those circumstances, but not all inclusive, is a situation where a spouse intentionally disposed of his or her tangible assets in order to deprive the other spouse of alimony *in solido* or where it could be shown that a spouse entered into the marriage solely to have his or her spouse work and provide him or her with an education.

*Id.* The *Hall* court, in concurring in the trial court's finding that the husband had been instrumental in the dissipation of the wife's assets, also concluded that dissipa-

tion was a relevant consideration in the fixing of alimony *in futuro* or *in solido.* 772 S.W.2d at 438.

■ In making the award of alimony *in solido* in the present case, the trial judge found that the sum awarded of $83,479.71 represented the parties' "equity balance after the sale of the homeplace which was disposed of by the husband to the detriment of the wife and children." In 1984 the parties sold their marital home and received as partial payment a promissory note payable to both parties in the amount of $83,479.71. Although the note specified that it was due in November 1990, in May 1986 Husband received a check in satisfaction of the note, which check was made out to Husband only. This amount, $83,479.71, represented the equity in the parties' home, and Husband acknowledged that these monies were marital property. He retained the funds and invested $80,000.00 into his company, Direct Transport, in which Wife had no ownership interest. When asked if he ever informed Wife of the receipt of these funds, Husband first stated that he did not recall. Upon further questioning, he stated that he believed he did tell his Wife. At trial Wife testified that he never told her he received the $83,479.71 from the note receivable, that she does not know what he did with the money, and that she did not know that he received the funds in May 1986. The parties separated in April 1988.

In view of the above circumstances, we conclude that the trial judge did not abuse her discretion in ordering Husband to pay the amount of the note received as alimony *in solido.* Our review of the record indicates that Husband disposed of marital assets without informing Wife and later concealed these actions from her. We believe that these actions constitute extreme circumstances which justify a departure from the general rule announced in *Aleshire.* Further, we consider it to be immaterial that Husband disposed of the funds *prior* to the parties' final separation, and Husband has cited no authority which makes such a distinction. This issue is without merit.

### Award of Attorney's Fees

The trial court also awarded Wife $8,000.00 as partial payment of her attorney's fees.

■ The decision to award attorney's fees to a party in a divorce proceeding, and the amount thereof, are largely within the trial court's discretion and will not be disturbed upon appeal unless the evidence preponderates against such a decision. *Batson v. Batson,* 769 S.W.2d 849, 862 (Tenn. App.1988); *Lyon v. Lyon,* 765 S.W.2d 759, 762–63 (Tenn.App.1988).

■ As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido,* the trial court should consider the relevant factors enumerated in T.C.A. § 36–5–101(d). Thus, where the wife has demonstrated that she is financially unable to procure counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. *Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn.App.1980); *Palmer v. Palmer,* 562 S.W.2d 833, 839 (Tenn.App.1977); *Ligon v. Ligon,* 556 S.W.2d 763, 768 (Tenn.App.1977). Where the court awards the wife alimony *in solido* adequate for her needs and attorney's fees, however, it may be improper for the trial court to make an additional award of alimony *in solido* for payment of the wife's attorney's fees. *Id.*

■ Because we find that the award of alimony *in solido* to Wife in the amount of $83,479.71 is a sufficient award from which to pay her attorney's fees, we conclude that the additional award of $8,000.00 for Wife's attorney's fees was not appropriate and, accordingly, we reverse that part of the trial court's order.

On appeal, Wife has requested that this Court award attorney's fees necessitated by Husband's appeal. In *Baggett v. Baggett,* 512 S.W.2d 292, 294 (Tenn.App.1973), this Court held that an award of attorney's fees was inappropriate where both parties were partially successfully on appeal. We decline, in this case, to award her attorney's fees incurred on appeal.

## Joint Obligations

The trial court ordered Husband to hold Wife harmless on certain joint obligations which resulted in two judgments and one pending lawsuit against Wife.

In apportioning marital debts, trial courts should consider the following factors:

(1) which party incurred the debt and the reason for the debt;

(2) which party benefitted from the loan; and

(3) which party is better able to assume the debt.

*Mahaffey v. Mahaffey*, 775 S.W.2d 618, 624 (Tenn.App.1989) (citations omitted). We next examine these factors as they relate to the three debts in question.

### Dominion Bank—$425,104.48

■ In 1982 Nashville City Bank, the predecessor of Dominion Bank, extended a line of credit to the parties in the amount of $150,000.00. This line of credit was increased later to $300,000.00. Husband testified that the parties used the line of credit to pay bills and to buy furniture and clothes. In addition, Husband invested in the commodities market, eventually losing over $100,000.00. He acknowledged that at least part of the $100,000.00 came from the $300,000.00 credit line. He also admitted that some of the $300,000.00 was invested in his business, Direct Transport, but again he could not remember exact amounts. Wife testified that, of the $300,000.00 extended in credit, she never saw any of the money and did not know how the money was spent. She also testified that she did not remember signing the guaranty to Nashville City Bank but acknowledged that the document contained her signature.

In considering the factors enumerated in *Mahaffey*, the trial court could have concluded that this debt was incurred primarily by Husband in furtherance of his various business pursuits. Wife exercised no managerial or proprietary control over these pursuits and possessed little knowledge thereof. Although Husband's businesses ultimately failed, it appears that he was the party which primarily benefitted from use of the money during the marriage. Husband concedes that neither party is in a position to pay this debt and we agree. In light of these circumstances, we conclude that it was within the trial court's discretion to order Husband to hold Wife harmless from the debt to Dominion Bank.

### Villager Condo—$1,400.00

■ Villager Condo obtained a judgment against Wife for unpaid maintenance fees on a condominium which was owned by the parties and later awarded to Wife in the final decree. She testified that, after the parties' separation in April 1988, Husband received the income from the rental of the condominium. Husband also made the mortgage payments on the parties' condominiums each month up until some point in 1989 when he quit making payments altogether.

This Court has recognized that, when practicable, marital debts should follow the assets they purchased. *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn.App.1989). Under this rule, Husband argues that Wife should be responsible for all debts associated with the condominium because she was awarded this asset in the divorce decree. While this may be the general rule, we find that the trial judge did not abuse her discretion in allocating this debt to Husband in light of the evidence that Husband was responsible for making the mortgage payments on the condominium and was receiving the rental income therefrom during the period in which the maintenance fees were incurred.

### SunTrust Mortgage, Inc.—$8,720.45

■ In addition to the above judgments, SunTrust Mortgage brought suit against Wife for a deficiency resulting from the foreclosure of another condominium belonging to the parties. After the parties' separation, Husband was also responsible for the mortgage payments on this condominium. When Husband ceased making payments sometime in 1989, SunTrust foreclosed. At trial Husband stated that he believed he informed his Wife when he quit making the payments. Apparently, Wife received rental income from this prop-

erty. She testified, however, that she did not receive rental checks after June 1989 and that Husband at one point told the renters to send the checks to him.

In view of the evidence that Husband was responsible for making the mortgage payments on the condominium and that he allowed the property to go into foreclosure, we hold that the trial judge did not abuse her discretion in ordering Husband to hold Wife harmless from this debt.

### Effect of the Husband's Discharge in Bankruptcy

Wife filed her complaint for divorce in February 1990. Subsequent to the filing of the complaint but prior to the entry of the final decree of divorce, Husband filed a Chapter 7 bankruptcy petition. The petition lists Wife as an unsecured creditor but does not specify the nature of her claim other than "contingent." The divorce decree was entered June 17, 1991. Although the record before us does not contain an order of discharge from the bankruptcy proceedings, there is apparently no dispute that Husband was discharged. The trial judge ordered Husband to hold Wife harmless on the joint obligations previously addressed, which Husband contends were discharged in his bankruptcy.

█ Under 11 U.S.C. § 727(a), a Chapter 7 debtor is entitled to a discharge of all pre-petition debts if the debtor has complied with the requirements of the Bankruptcy Code. *First Union National Bank v. Naylor*, 102 N.C.App. 719, 404 S.E.2d 161 (1991). The discharge in bankruptcy "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged." 11 U.S.C. § 524(a)(1). Husband argues that this section operates to void the judgment of the trial court ordering him to hold Wife harmless on certain debts as to which Husband received a discharge in bankruptcy.

█ We recognize that the trial court has concurrent jurisdiction with the bankruptcy court to determine the dischargeability of debts to a spouse incurred in connection with a divorce decree. *In re Rickman*, 79 B.R. 753 (Bankr.W.D.Tenn. 1987). Under 11 U.S.C. § 523(a)(5), the determination of dischargeability depends on whether the debt may be characterized as alimony, maintenance, or support. *See In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). However, the issue of dischargeability was not presented to the trial court. Although post-decree motions were filed, none dealt with whether the divorce decree imposed upon Husband debts which had been discharged.

The only document from the bankruptcy proceedings appearing in this record is the petition. Wife's complaint sought that she be held harmless from any obligations associated with any business investments or obligations in which Husband was involved. As noted, Wife was listed as a creditor on Husband's bankruptcy petition. The record before us is silent as to whether Wife filed an objection to discharge of her claim and is silent as to the nature of her claim. Since the trial court has not had an opportunity to determine the question of dischargeability, this cause is remanded to the trial court for that purpose.

This cause is remanded to the trial court to determine the issue of dischargeability. As to the remaining issues, the judgment of the trial court is otherwise affirmed except for the modification concerning the award of Wife's attorneys' fees. Costs of this appeal are taxed one-half to the appellant and one-half to the appellee for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.