# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 10, 2000 Session

## NANCY SCHULZE RECORD v. BRIAN VERNON RECORD

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 157151 R.D.     The Honorable Robert A. Lanier, Judge**

------

**No. W2000-01294-COA-R3-CV - Filed December 28, 2000**

------

Husband appeals a final decree of divorce as it pertains to an upward deviation of child support, division of marital property and debt, and the award of alimony *in solido* for attorney fees. We affirm as modified.

**Tenn.R.App.P. 3, Appeal as of Right; Judgment of the Circuit Court is Affirmed as Modified**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Barry Gilmore, Memphis, For Appellant, Brian Vernon Record

Dorothy J. Pounders, Memphis, For Appellee, Nancy Schulze Record

### OPINION

Parties, Nancy Schulze Record, plaintiff/appellee ("Wife") and Brian Vernon Record, defendant/appellant ("Husband") were married on August 22, 1981, in Wilmington, Delaware. Twins, Walter Ross Record and Alexandra Jackson Record, were born of this marriage on March 7, 1990. Alexandra is severely disabled and requires special care. In May of 1997, the parties separated, and Husband moved out of the marital home located in Germantown, Tennessee. In February of 1998, Husband left his employment at Harrah's, at an annual salary of $72,000.00, in order to accept a position in Orlando, Florida with Sunterra Resorts in risk management with an annual base salary of $135,000.00.

Following the parties' move to Germantown, Wife did not work outside the home, however, she returned to work shortly before the parties' separation. Wife is currently employed as the Executive Director of Community for Rooms with an annual salary of $43,000.00. Wife has a degree from American University in Administrative Justice.

On October 10, 1997, Wife filed a complaint for divorce alleging grounds of irreconcilable differences and inappropriate marital conduct. Wife's affidavit states her monthly gross income as $3,666.66, and claims monthly expenses for herself and the two children of $6,614.00. Husband's affidavit claims a total gross monthly income of $11,250.00. Husband's total expenses were reported at $7,780.00, including $350.00 per month travel expenses for visitation. Wife's attorney filed an affidavit of fees in the approximate amount of $19,290.00.

A non-jury trial was held on November 2, 1999, and the court filed a memorandum opinion on November 3, 1999, finding that the parties should be divorced upon the ground of inappropriate marital conduct. The court found, *inter alia,* that in 1996, the parties began to live separately under the same roof in their home, and that Husband moved out in May of 1997. The trial court further found that Husband, age 43, left his employment in Shelby County in February of 1998 in order to double his annual salary by accepting employment in Orlando, Florida at an annual salary of $135,000.00, and was given a bonus of $15,000.00 in April of 1999. At least partly as a result of this move, Husband does not visit with the children as much as contemplated by the Tennessee Child Support Guidelines. The trial court stated that for that reason, and because of the other circumstances of the parties, child support should be varied upward from the minimum guideline figure of $2,487.00 to $2,759.00 per month. The trial court found that the fair market value of the marital home in Germantown was $260,000.000, and the outstanding mortgage is $197,000.00, resulting in an equity in the home of $63,000.00, with each party's share being $31,333.00.

In the final decree of divorce filed on February 3, 2000, the parties were granted joint custody of the two minor children with both children to reside with Wife. Each party was awarded $31,331.00 as one-half of the equity in the marital home, and Husband's share was then awarded to Wife as alimony *in solido*. Husband was ordered to transfer his interest in the home to Wife, and Wife is to assume the indebtedness on the home and hold Husband harmless on said liability. Wife's request for alimony *in futuro* was denied. In allocating the marital debt, the trial court assigned $36,0887.73 to Husband and $13,371.12 to Wife. Wife received the 1993 van. Husband received the leased 1998 Volvo that Wife valued at $3,000.00. Husband was awarded a jet ski and the debt associated thereto. The parties stipulated that the value of the personal property located inside the marital home awarded to Wife was $10,000.00. Husband stipulated that the value of the personalty in his possession was $500.00. Wife was awarded her Mass Mutual IRA with a stipulated value of $15,000.00, and any funds in her checking account with First Tennessee Bank. Husband was awarded his 401k through Harrah's and any bank accounts that he has with Nations Bank or Bank of America in Orlando, Florida. Wife was awarded $15,000.00 in attorney's fees.

Husband appeals the final decree, raising four issues as stated in his brief:

1.   Did the Court err in ordering an upward deviation in Guideline Child Support in light of Husband's travel related visitation expenses?

2.   Did the Court err in its division of the marital estate?

3.	Did the Court err in its division of the marital debt?

3a.	Did the Court err in classifying the loan from Wife's brother as a marital debt?

4.	Did the Court err in awarding $15,000.00 as alimony *in solido* for Wife's attorney's fees?

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

With regard to Husband's first issue, whether the trial court erred in awarding an upward deviation from the Tennessee Child Support Guidelines, Husband asserts that he pays for all of the expenses related to visitation with his children at a cost of over $350.00 per month. Husband submits that a deviation upward from the guidelines is unjust, unfair, and inappropriate under the facts and circumstances of this case. He asserts that by taking the job in Orlando, he was able to increase the amount of his child support obligation by $1,136.00 per month. He avers that any presumption requiring an upward deviation has been rebutted.

In *Dwight v. Dwight*, 936. S.W.2d 945 (Tenn. Ct. App. 1996), this Court addressed the role of the guidelines in setting minimum child support and deviation from the standards set forth therein, stating:

> The guidelines allow an upward deviation where the non-custodial spouse exercises "less than average overnight visitation." The Guidelines state:
>
> > These guidelines are designed to apply to situations where children are living primarily with one parent but stay overnight with the other parent at *least as often* as every other weekend from Friday to Sunday, two weeks in the summer and two weeks during holidays throughout the year....
>
> > *	*	*	*	*
>
> Tenn.Comp.R. & Regs, tit. 10, ch. 1240-2-4-.02 (6)(7). Similarly, where overnight time is divided less equally between the parents, the support award should be adjusted appropriately.

The Guidelines further provide that since the percentage awards in the Guidelines are a minimum the court shall increase the child support award for the following reasons:

> If the child(ren) is/are not staying overnight with the obligor for the average visitation period of every other weekend from Friday evening to Sunday evening, two weeks during the summer and two weeks during holiday periods throughout the year, then an amount shall be added to the percentage calculated in the above rule to compensate the obligee for the cost of providing care for the child(ren) for the amount of time during the average visitation period that the child(ren) are not with the obligor.

Tenn.Comp.R. & Regs. tit. 10, ch. 1240-2-4-.04(1)(b).

*Dwight,* 936 S.W.2d at 949. There is statutory authority for deviation from the child support guidelines provided in T.C.A. § 36-5-101, which states:

> (e)(1) On making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties.

Tennessee courts have held that the child support guidelines may be deviated upward or downward "when the assumptions on which they are based do not pertain to a particular situation." *Nash v. Mulle,* 846 S.W.2d 803, 805 (Tenn. 1993); *see also Jones v. Jones,* C.A. No. 03A01-9503-CH-00083, 1995 WL 481751 at *2, (Tenn. Ct. App. Aug. 16, 1995). In decisions regarding the amount of child support, need and ability to pay are factors to be considered. *Kimble v. Kimble,* No. 02A01-9503-CV-00049, 1996 WL 445272 at *1 (Tenn. Ct. App. Aug. 8, 1996). The *Kimble* Court addressed the question of an upward deviation from the child support guidelines, stating:

> In *Lindberg v. Lindberg,* No. 02A01-9407-CV-00169 (Tenn. Ct. App. 1995), this Court held that, in accordance with the guidelines, there is to be an "upward or downward deviation when certain assumptions upon which the Department of Health and Safety based the regulations are not present." *Lindberg,* slip op. at 8 (citing *Nash v. Mulle,* 846 S.W.2d 803, 805 (Tenn. 1993)). In the event of

-4-

non-visitation, *Lindberg* held that a trial judge is "to increase the amount of child support from the guidelines minimum to some amount that would *approximate the expense incurred* by the custodial parent that [he/she] would not...otherwise have incurred if the obligor parent had appropriately exercised his visitation." *Id.* (Emphasis added.)

*Kimble* at *4.

However, in making a decision on whether to deviate from the child support guidelines, the court in *Whitfield v. Whitfield,* No. 03A01-94-CV-00140, 1994 WL 465796, (Tenn. Ct. App. Aug. 30, 1994) stated, "[w]e believe that visitation time, standing alone, is insufficient to make a determination of whether or not the deviation from the guidelines is reasonable." *Id.* at *2. The *Whitfield* Court remanded the case for a determination of visitation expenses and for a ruling on deviation from the child support guidelines considering such expenses.

Upon a review of the record, we believe that the particular facts of this case do not support an upward deviation from the child support guidelines. Although Husband admittedly is not spending the amount of visitation time with his children envisioned by the legislature in promulgating the child support guidelines, the time factor alone is insufficient to justify an upward deviation in this case. Husband left his job in the Memphis area to take a position offering at least twice the annual income of his former employment. This move changed his child support obligation under the guidelines from approximately $1,351.00 per month to $2,487.00 per month. Husband's relocation afforded an increase of $1,136.00 per month in his child support obligation. Providing this substantial benefit to his children, however, required that Husband move to Orlando, Florida; thus making the usual visitation schedule of a non-custodial parent unrealistic. In addition, Husband incurs more than $350.00 per month in travel expenses associated with visitation. In deviating upward from the child support guidelines, the trial court stated in the final decree:

> Husband earns a base salary of $135,000.00 per year and received a $15,000.00 bonus in April of 1999. Due at least partly to Mr. Record's move to Orlando, the father does not visit with the minor children as much as contemplated by the guidelines, for that reason, and because of other circumstances of the parties, child support should be varied upward form the minimum guideline figure of $2,487.00 to $2,759.00 per month.

In so ruling, the trial court deviated upward from the child support guidelines in the amount of $272.00 per month, indicating that amount would cover the extra expense incurred by Wife due to Husband's lack of visitation. We believe that the $1,136.00 per month increase in Husband's child support obligation is more than sufficient to cover additional expenses incurred by Wife due to Husband's lack of visitation. In addition we note that although Alexandra requires additional care and attention, this extra need is met, at least in part, by aides the state provided at no cost to Wife.

Aides are present in the home from 2:30 p.m. through 8:00 p.m. five days a week, and five (5) hours a day on Saturday and Sunday. Finally, the fact that Husband incurs approximately $350.00 per month in visitation related travel expense indicates that the upward deviation is an inequitable adjustment to Husband's child support obligation. Accordingly, we modify the decree with regard to an upward deviation to Husband's child support obligation. Husband's child support payment should be set at $2,487.00 per month in accordance with the child support guidelines.

In Husband's second issue, he contends that the trial court's division of the marital estate is grossly inequitable. Husbands asserts that Wife received the entire equity in the marital residence, her automobile, which is paid for, the personalty contained in the marital residence, her IRA, and her bank account, for a total of net assets received by Wife of approximately $61,031.00. In contrast, Husband asserts that he received his leased automobile, the personalty in his possession, his 401(k), a jet ski, which is followed by a debt, and his bank account, for a total of assets received by Husband of approximately $7,927.00. Husband contends that both parties worked during the marriage with the exception of three years that the Wife remained at home. During most of the marriage, Wife earned more money than Husband. In addition, Wife has no mental or physical problems, other than high blood pressure, which is controlled by medication. She has an earning capacity that allowed her make more money than Husband for the majority of the marriage. Husband asserts that the marital assets total $68,958.00, and that Wife was awarded 88.5% of the assets, while Husband received only 11.5% of the assets.

Husband contends that this is not an equitable division of marital assets, and leaves him in a much worse financial situation than Wife. On the other hand, Wife argues that Husband stipulated to the division of property at trial, with the exception of the award of the marital home to Wife, which he suggested be sold and the proceeds equally divided. Husband should not be allowed a reallocation because he has changed his mind. Wife agrees that the court did ultimately award Husband's share of the marital home to Wife, however this was as alimony *in solido*, and was not part of the property division. In addition, Wife asserts that Husband earns an annual income of $135,000.00, received a bonus of $15,000.00 in April of 1999, and is eligible for annual increases. Husband does not have physical custody of the children, and therefore does not have the limitations on his time that a custodial parent assumes. Wife states that she earns $43,000.00 per year and has physical custody of the two children, with one requiring 24-hour supervision. Wife concedes that she receives government-funded assistance to help care for the disabled child; however, she states that she is restricted to holding an employment position with a great deal of flexibility that permits her to care for the disabled child when aid is not available. Wife contends that she has repeatedly put her career on hold to relocate for the benefit of Husband's career and to care for the children.

T.C.A. § 36-4-121( c) provides the criteria which courts use in making an equitable division of marital property, and provides:

> In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

We agree with Wife that Husband stipulated to the division of marital property with the exception of award of the marital home to Wife. The Husband requested that the marital home be sold and the proceeds divided equally between the parties. However, the trial court awarded the home to Wife, stating in its memorandum opinion:

Husband and Wife are equitably owners in equal shares of the family home in Germantown, Tennessee. The home is the only one which the children have known for the last five years and it contains not only a swimming pool, which the disabled child likes to use in warmer weather , but also special swing recreation equipment, installed semi-permanently upon the property at government expense, for the use of the child. The children are a very short distance from

the schools which they presently attend. The fair market value of the house at this time is $260,000.00 and the outstanding mortgage is approximately $197,000.00. This result is an equity in the home of $63,000.00 and the outstanding mortgage is approximately $197,000.00. This results in an equity in the home of $63,000.00 and each party's share has a present value of $31,333.00. Husband's share of the equity in the house should be awarded to Wife as alimony *in solido*. Wife will be custodian of the disabled child as long as she and the child live and will be unable to obtain employment to her full potential. On the other hand, her present earing capacity is a gross of $43,000.00 per year or $3,366.00 a month gross and $2,730.00 a month net.

Evidence in the record does not preponderate against the trial court's decision to award the marital home to the Wife.[1] The trial court's division of marital assets adequately takes into consideration the factors listed in T.C.A. § 36-4-121 ( c) and appears to be an equitable division of assets in this case. Accordingly, we affirm the trial court's division of marital assets.

In Husband's next two issues, he challenges the trial court's allocation of marital debt and the classification of the loan from Wife's brother as marital debt. Husband maintains that the credit card debt accumulated after the parties moved to Memphis, and was incurred in maintaining the parties' lifestyle. He argues that both parties are jointly and equally responsible for this debt since both parties received the benefit of the debt.

Husband disputes the allocation of only $13,371.12 of the marital debt to the Wife. Husband argues that this amount includes a $12,000.00 debt to Wife's brother which is not correctly classified as marital debt as it was not incurred during the marriage for the benefit of both parties. Husband asserts that most of the financial burden of the parties falls on him, despite the fact that Wife is equally responsible for incurring all of the marital debt, and in fact receives a good salary and child support to defray the expenses of the children.

Wife contends that it was within the sound discretion of the trial court to hold Husband responsible for the amount of marital debt allocated to Husband. Wife asserts that she is entitled to receive a lesser portion of the marital debt because Husband is in a better position to repay the marital debt. Therefore, marital debt should not be reallocated on appeal.

In *Herrera v. Herrera*, 944 S.W. 2d 379 (Tenn. Ct. App. 1996) this Court addressed the question of the division of marital debt stating:

---

[1] In his brief, Husband contends that the trial court erred in awarding attorney's fees as alimony *in solido*, but presents no issue with regard to the award of his portion of the equity in the home as alimony *in solido*.

Marital debt should be allocated as are marital assets and should be considered when making an equitable division of property. *Newberry v. Newberry,* 493 S.W.2d 99, 102 (Tenn.Ct. App.1973). Because Tennessee is a dual property jurisdiction, the trial court should separate individual and marital debts. *Batson v. Batson,* 769 S.W.2d 849 (Tenn. Ct. App.1988); *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App.1989). Dr. Herrera maintains that the Chancellor erred in not making a finding as to the classification of both the marital and the separate debts...... *Mondelli* set forth the following factors which a court should weigh when dividing marital debt: (1) which party incurred the debt and the debt's purpose, (2) which party benefitted from incurring the debt, and (3) which party is best able to assume and repay the debt. *Mondelli,* 780 S.W.2d at 773.

This Court customarily gives great weight to decisions of the trial court in dividing marital estates and we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results from some error of law or misapplication of statutory requirements and procedures. *Wade v. Wade,* 897 S.W.2d 702, 715 (Tenn. Ct. App.1994). The trial court's distribution need not be equal to be equitable. *Batson v. Batson,* 769 S.W.2d 849, 859 (Tenn. Ct. App.1988).

*Herrera*, 944 S.W.2d at 389. *See also Goodman v. Goodman,* 8 S.W.3d 289, 298 (Tenn. Ct. App. 1999).

The trial court's memorandum opinion states that the liabilities of the parties should be divided in the manner set forth in Wife's Rule 14 (d) Memorandum. The final decree lists the parties' liabilities and divides them as follows:

Husband shall be responsible for the following debt, and hold the Wife harmless on the same:

| Liability | Approximate Balance |
| --- | --- |
| Choice/Citibank Visa | $5,475.00 |
| Nations Bank Visa | $7,100.00 |
| First Advantage | $11,099.00 |
| Dept. of Treasury | $4,711.03 |

| | |
|---|---|
| Bank of America | $6,727.70 |
| Unpaid Medical bills of children Physical and Occupational Therapy | $350.00 |
| Unpaid dental bill of children | $625.00 |
| Total | $36,087.73 |

Wife shall be responsible for, pay and hold Husband harmless for the following debt:

| Liability | Approximate Balance |
|---|---|
| Target Card | $300.00 |
| Ann Taylor Card | $500.00 |
| Sears Credit Card | $321.12 |
| Unpaid Medical bills of children Physical and Occupational Therapy | $125.00 |
| Unpaid dental bill of children | $125.00 |
| Loan from Wife's brother for attorney fees | $12,000.00 |
| Total | $13,371.12 |

Husband contends that the $12,000.00 debt allocated to Wife as marital debt should not have been included as a marital liability. We agree with Husband's contention. According to Wife's testimony at trial, the $12,000.00 debt to Wife's brother was borrowed by Wife while the parties were living apart to pay expenses incurred during the process of the parties' divorce. Wife offered no proof that Husband benefitted from such debt, and the record reflects this was Wife's personal debt. Moreover, Wife was awarded additional alimony *in solido* for attorney fees. Therefore, the trial court incorrectly designated the debt to Wife's brother as a marital debt. The marital debts total $37,458.00.

The question remains as to the allocation of marital liabilities excluding Wife's debt to her brother. The division of the debts by the trial court represented approximately 73% to Husband and approximately 27% to Wife, and the evidence does not preponderate against such allocations. Accordingly, Husband should be responsible for approximately $27,344.00 of the debt, and Wife should be responsible for approximately $10,114.00. On remand, the trial court shall designate the specific debts to be paid by each party.

Finally, Husband contends that the trial court erred in awarding Wife $15,000.00 for attorney's fees as alimony *in solido*. Husband asserts that Wife has no need, nor does Husband have the ability to pay Wife's attorney's fees. Husband further argues that there is no need to award her attorney's fees, because the trial court's allocation of marital liabilities included an assignment of the $12,000.00 debt borrowed by her to pay legal fees. Husband also asserts that according to the law in Tennessee, alimony *in solido* should not be awarded out of an expectation of future earnings. Husband contends that there is no evidence in the record that he has any substantial bank account, real property or current assets or any estate from which to pay alimony *in solido*, thus the award of attorney's fees as alimony *in solido* is an abuse of the trial court's discretion.

An award of attorney fees constitutes alimony in solido. **Herrera v. Herrera,** 944 S.W.2d 379, 390 (Tenn. Ct. App.1996); **Cranford v. Cranford**, 772 S.W.2d 48, 52 (Tenn. Ct. App.1989). The decision whether or not to award attorney's fees is within the sound discretion of the trial court and "will not be disturbed upon appeal unless the evidence preponderates against such a decision." **Kincaid v. Kincaid,** 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995); *see* Rule 13(d) Tenn. R. App. P.

As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the relevant factors enumerated in T.C.A. § 36-5-101(d). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. **Umstot v. Umstot** 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); **and Duncan v. Duncan**, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984). Where the court awards the wife alimony in solido adequate for her needs and attorney's fees, it may not be proper for the trial court to make an additional award of alimony in solido for payment of the wife's attorney's fees. **Id.** In **Brown v. Brown**, 913 S.W.2d 163 (Tenn. Ct. App. 1994), this Court said:

> These awards are appropriate, however, only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, **Houghland v. Houghland,** 844 S.W.2d 619, 623 (Tenn. Ct. App.1992); **Ingram v. Ingram,** 721 S.W.2d at 264, or would be required to deplete his or her resources in order to pay these expenses. **Harwell v. Harwell,** 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980).

**Id. at** 170. Where one party has been awarded additional funds for maintenance and support and such funds are intended to provide the party with a source of future income, the party need not be required to pay legal expenses by using assets that will provide for future income. **Batson v. Batson**, 769 S.W. 2d 849, 862 (Tenn. Ct. App. 1988). Thus, where the wife has demonstrated that she is financially unable to procure counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. **Harwell v. Harwell,** 612 S.W.2d 182,

185 (Tenn. Ct. App.1980); *Palmer v. Palmer,* 562 S.W.2d 833, 839 (Tenn. Ct. App.1977); *Ligon v. Ligon,* 556 S.W.2d 763, 768 (Tenn. Ct. App.1977).

In *Houghland v. Houghland,* 844 S.W.2d 619 (Tenn. Ct. App. 1992) this Court held that where the wife is unable to pay attorney's fees, and the husband has the ability to pay, the court may properly order an award for attorney's fees. *Id.* at 623 (citations omitted). The *Houghland* Court, however, limited the award of attorney's fees, stating that where there has been an additional award of alimony *in solido* adequate to meet wife's needs and pay her attorney's fees, it may be improper for the trial court to award attorney's fees. *Id.* Tennessee courts have held that alimony *in solido* should be awarded generally only out of a spouse's estate and not be awarded out of an expectation of future earnings. *Goodman v. Goodman*, 8 S.W.2d 289, 297 (Tenn. Ct. App. 1999). The court in *Aleshire v. Aleshire*, 642 S.W.2d 729, 733 (Tenn. Ct. App. 1981) determined that, absent extreme circumstances, alimony *in solido* should not be awarded out of an expectation of future earnings. In *Day v. Day*, 931 S.W.2d 936 (Tenn. Ct. App. 1996) the husband asserted that the trial court erred in awarding alimony *in solido* because such award should not be awarded out of future earnings. In affirming the trial court's award of alimony *in solido*, this Court stated:

> Petitioner also argues that alimony in solido is not to be awarded out of future earnings. However, in *Aleshire v. Aleshire,* 642 S.W.2d 729 (Tenn. Ct. App.1981), this Court, addressing that issue, stated:
>
> > We do not hold that in no event may alimony in solido be awarded from future earnings. Extreme circumstances could arise where it might be necessary to do so. Illustrative of those circumstances, but not all inclusive, is a situation where a spouse intentionally disposed of his or her tangible assets in order to deprive the other spouse of alimony in solido or where it could be shown that a spouse entered into the marriage solely to have his or her spouse work and provide him or her with an education.
>
> 642 S.W.2d at 733.
>
> In the instant case, the trial court found that Ms. Day should be reimbursed for the indebtedness she incurred in educating herself in order to provide for her own support. The trial court noted that had this not been done, she would have been entitled to rehabilitative alimony for the same purpose. Extreme circumstances exist in this case to warrant an award of alimony in solido out of future earnings.

*Day,* 931 S.W.2d at 939.

In the case at bar, Wife's ability to increase her earnings in the near future is not likely. The record indicates that Wife is probably qualified to earn a greater income than the $43,000.00 annual salary than she currently receives. However, Wife is limited by the need to remain in a flexible position where she is able to meet the needs of her disabled child when assistance is not available. Wife's current position affords her this flexibility, but has limited prospects of financial advancement. Wife has received Husband's share of the marital home as alimony *in solido*, however, with this award comes a $197,000.00 mortgage upon which Wife is now solely liable. We do not think that the evidence preponderates against the trial court's award of $15,000.00 attorney's fees to Wife. In addition, the modification of the trial court's division of marital liabilities eliminates the prospect of Wife receiving a windfall from this award, as argued by Husband. We believe that these circumstances warrant the $15,000.00 award of attorney's fees to Wife, and the record indicates that given Husband's annual salary of $135,000.00 with possible bonuses and increases, he has the ability to pay this award.

The final decree of the trial court is modified to award child support in the amount specified by the guidelines without the upward deviation and is further modified to determine and divide the marital debt as heretofore set out in this Opinion. The case is remanded to the trial court for a determination of the specific debts to be allocated to each party consistent with this Opinion. As modified, the final decree is in all other respects affirmed. Costs of the appeal are assessed one-half to appellant, Brian Vernon Record and his surety and one-half to appellee, Nancy Schulze Record.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.