SHELLEY (DOUGLAS) STEVENSON,      )
                                  )
        Plaintiff/Appellee,       )      Appeal No.
                                  )      01-A-01-9506-CV-00230
v.                                )
                                  )      Davidson Circuit
MICHAEL KINGSTON STEVENSON,        )      No. 93D-3651
                                  )
        Defendant/Appellant.       )

FILED

December 18, 2001

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE

MIKE W. BINKLEY
150 Second Avenue North, Suite 300
Nashville, Tennessee  37201
      ATTORNEY FOR PLAINTIFF/APPELLEE

JACK NORMAN, JR.
213 Third Avenue North
Nashville, Tennessee  37201

NADER BAYDOUN
JOHN I. HARRIS, III
Suite 2420, Nashville City Center
511 Union Street
Nashville, Tennessee  37219-1716
      ATTORNEYS FOR DEFENDANT/APPELLANT

AFFIRMED as MODIFIED
and REMANDED

SAMUEL L. LEWIS, JUDGE
# MEMORANDUM OPINION[1]

This is an appeal by defendant, Michael Kingston Stevenson (Husband), from the trial court's award of alimony in solido, alimony in futuro, the amount of child support award, and the award of additional alimony in solido of $9,700.00 for plaintiff, Shelly Sue Douglas Stevenson's (Wife), attorney's fee.

The parties were married in 1982 and have two sons of the marriage, one thirteen and the other eleven. The parties separated in September 1993.

At the time the parties married, and until 1984, they lived in a studio apartment located in some mini warehouses which were owned by Husband's parents and brother. The parties had lived at the studio apartment prior to their marriage.

From 1984 to 1991 they lived in Key West, Florida at some property owned by the Husband's parents and brother while the Husband worked for the parents and the brother to reconstruct and remodel the property. In 1991 the parties moved back to Nashville and moved into the Husband's parents home which is divided into separate apartments.

The Husband has a high school education and approximately two years of college. He quit college in 1977 and began doing general repair maintenance and construction work for his parents and brother. He has continued to work for his parents and brother

---

[1]
Court of Appeals Rule 10(b):
> The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

doing this type of work since 1977. He initially earned between three and six dollars per hour working for his parents and in addition, his parents provided him and his Wife a place to live. In 1992 the Husband started receiving a salary of $200.00 per week from his father in addition to having living accommodations and utilities furnished as well as access to a vehicle. The Wife also worked for the Husband's family "the whole time" the parties were married. Their joint tax returns for 1986 through 1991 show a combined net annual income which ranges from $5,293.00 to $10,975.00.

The parties had lived together before they married, and the Wife therefore knew where they would live and what type of career her Husband had in mind after the marriage. She knew that he owned no property. The property is owned by Husband's parents and brother and was acquired by them prior to the time that the parties married. There is no evidence the Husband ever invested any money in any of the properties owned by the parents or his brother.

The Husband's parents are now in their seventies and he does not believe they would be able to maintain their investment properties if he took a job independent of them. He has not sought other employment because he feels an obligation to take care of his parents and because he believes that he would be unable to net any more working for a third party because his living expenses would be greater and would not be taken care of as they are at the present time.

In early 1992, the Wife applied for Medicaid after she had learned that she had a brain tumor and because of her concern of the financial drain that treatment might put on the "family." She was advised at the time she applied for Medicaid that she also qualified for food stamps and AFDC.

3

The Wife has two years of college and will complete Baptist Hospital's LPN program in May 1995. Her medical problems do not prevent her from being employed. She has had various jobs since she and the Husband separated in which she earned $6.00 to $8.75 per hour.

The Husband insists that his income should be calculated exclusively by his reported salary of $800.00 per month plus his food and lodging, and that his earning capacity should be determined exclusively by his opinion that he would be able to earn only $400.00 per week in the open labor market. Husband also asserts that because the Wife is obtaining her license as a practical nurse, that their respective incomes and earning capacities are approximately equal. The Husband therefore argues that the trial court abused its discretion in awarding the Wife any support whatsoever.

The Husband contends that the trial court erred in its factual finding that he had the ability to pay the $700.00 per month support awarded to the Wife. He insists there is insufficient evidence to establish an earning capacity in excess of $20,800.00 per year, and that the expert's testimony relative to his earning capacity should have been rejected. He also argues that any consideration of the financial resources of his family or the "gifts" he received from the family should be rejected.

The trial court had before it the information contained in the Husband's tax returns and was unpersuaded by this argument or by the Husband's opinion of his earning capacity and the sources of his income. The record shows that an assessment of the Husband's earning capacity was difficult because the Husband had worked for the family's partnership for a nominal salary for his entire working life and he had no history of income in the open job

4

market.

However, the evidence did contain a comprehensive list of skills possessed by the Husband, his prior work experience, description and photos of the projects he had completed, the worth placed on his skill and experience by his employer, i.e. his family, and expert testimony relative to what the Husband would be able to earn if he quit the family partnership and obtained a job in the open market.

The trial judge was persuaded by all of the evidence rather than believe the Husband's assessment of himself. The court established the Husband's support obligations according to the factual finding that the Husband was underemployed and had an earning capacity which would make it sufficient for him to pay the support awarded. This factual conclusion depends primarily upon the credibility assessment made by the trial judge and is entitled to great weight on appeal. *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47, 49 (Tenn. 1959). In fact, to overturn this finding requires concrete and convincing evidence other than oral testimony of witnesses. *Tenn. Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. App. 1974). There is no evidence cited by the Husband, either oral or documentary which preponderates against the trial court's factual findings. There is evidence in the record from the Wife that the Husband earned approximately $3,000.00 in cash per month which was not reported as taxable income and in addition, valuable fringe benefits of his participation by working for his family. These benefits included free lodging, free transportation, payment of medical costs, cash as needed, and subsidization of living expenses and access to the family resources.

The Wife presented an expert's testimony that showed that

5

Husband's earning capacity in the open labor market was between $49,000.00 and $96,000.00 per year. It shows that the cash withdrawals made by the Husband for family expenses, his declared salary, the value of housing and transportation, along with medical care, access to funds when he needed them and general financial security exceeds, or is equal to, the median earning capacity presented by the Wife's expert witness.

Following our review of this record we are of the opinion that the evidence does not preponderate against the findings of the trial court that the Husband has the ability and the Wife has the need for $700.00 per month alimony.

Defendant's second issue is: "The trial court erred in awarding the Wife $12,000.00 as alimony in solido."

It is clear from the trial court's statement that this amount was based solely on the fact that the parties were married for twelve years and what the Husband might have been able to save if he had worked outside the family.

We presume from the trial court's factual finding that the court intended to retroactively impose a duty on the Husband to maximize the marital estate during the parties' marriage. The trial court appears to have placed the entire burden for managing the marital estate on the Husband but without any concurring obligation on the Wife. The trial court stated that the Husband had "elected to enhance the estate of his parents and brother to the exclusion of his own marital estate with his wife, and as a result she has no assets." The trial court had already found that the parties did not have any material marital estate. "For twelve years these parties had - twelve years of marriage they have virtually zero in the marital estate, but he does have earning

6

capacity."  The trial court in awarding alimony in solido stated "the court further finds that Mr. Stevenson has the ability to pay a lump sum amount of alimony.  As I said he's worked for twelve years, and has virtually no marital estate because he's enhanced other people's estate to the detriment of his family.  I will award her $12,000.00 as alimony in solido."

We think it is clear from the record that these parties had no marital estate.  The trial court awarded what marital assets there were to the Wife.  The Wife asked for and received substantially all of the tangible assets.  She retained various items of jewelry which she had received from her Husband during the marriage and which had an original cost in excess of $5,470.00.  She retained her investment account that her mother had for her with a balance of "$10,000.00 to $15,000.00."  She also retained a car which was purchased for $4,400.00 and was given to her by the Husband's family.  She disposed of this automobile after the parties separated.

There is nothing in this record to show that the Husband had any bank accounts, real property, or current assets or any estate from which to pay alimony in solido.  Alimony in solido should be awarded generally only out of a spouse's estate.  *Houghland v. Houghland*, 844 S.W.2d 619, 622 (Tenn. App. 1992).  In *Houghland* this court rejected the Husband's argument that the trial court had improperly awarded alimony in solido out of an expectation of future earnings, noting that there was an exception to the general rule which applied under the facts of *Houghland*.

> In view of the above circumstances, we conclude that the trial judge did not abuse her discretion in awarding Husband to pay the amount of the note received as alimony in solido.  Our review of the record indicates that Husband disposed of marital assets without informing Wife and later concealed

7

these actions from her. We believe that these actions justify a departure from the general rule announced in **Aleshire**.

*Id.* at 623.

Here, there was no factual finding nor is there any evidence in the record to establish the Wife's need for an award of alimony in solido or an award of such in the amount established by the trial court. There is no factual finding of the existence of any assets or estate that the Husband has from which to make the alimony in solido payments. The only finding by the trial court with respect to Husband's ability to make any payments other than reliance upon his parents and brother was his earning capacity, that is, his expectations of future earnings.

Under these circumstances we are of the opinion that the trial court erred in awarding the Wife alimony in solido.

Defendant's next issue is: "The trial court erred in awarding the Wife $800.00 per month as child support."

In this court the Husband contends that the trial court erred in setting the child support obligation without making a finding in regard to his net income in applying the child support guidelines. He asked that this issue be remanded to the trial court for a determination and written findings if the court deviates from the guidelines. At trial no such demand was made. Defendant Husband stated in closing arguments that:

> This court has made a previous finding that this man was under-employed and you set the child support at $800.00 per month, and that equates out to an income of $40,200.00 for Mr. Stevenson. Now, if the court please, I think that's stretching his ability, but we'll live with that and we have lived with it. I say 'we.' I mean Mr. Stevenson. He has made the payments of child support. And at the outset of this case I told the court that he would continue to make those payments of child support even if he had to borrow it from his family, which

8

that's exactly where it's coming from. Now, if you believe what he says about his income, his earning capacity ... then you're taxing him in child support way beyond his means but we will accept your finding as to his ability to earn income.

Here, it was almost impossible for the trial court to precisely calculate the Husband's actual income because his family fully supported him and in exchange he worked for the family on a consistent basis for small monetary compensation. The court could only determine that the Husband was provided "any and all funds" that either he or the Wife or the children needed. There was nothing in the record from which the trial court could accurately pinpoint the Husband's earning capacity because he had never worked in the open job market. In regard to his earning capacity, the trial court had a range of between $49,000.00 and $97,000.00 from which to chose based on the Wife's expert's opinion testimony.

The Wife contends that the trial court did as best it was able in setting child support in this case.

The Wife contends that the child support should be set according to the mean earning capacity as testified to by her expert witness, Dr. Anchor. That is, $62,400.00.

Under the guidelines, child support is determined as a percentage of the obligor parents' net income and presumes that the obligee parent will be expending an equal percentage of net income for support of the parties' children. *Malone v. Malone*, 842 S.W.2d 621, 624 (Tenn. App. 1992).

From our reading of this record, we are of the opinion that the trial court's findings regarding child support do not reflect that the court set support in accordance with the guidelines. The trial court made no findings regarding the Wife's net income and

9

made no findings regarding the application of the child support guidelines to the Husband's net income. There were no findings made regarding whether the application of the guidelines would be just or equitable under the circumstances.

We are unable to tell from the record whether the trial court was applying the guidelines or deviating from them. No specific findings were made by the court that it would be appropriate to deviate from the guidelines. The trial court merely set child support for the two children to remain unabated even after the eldest child reached the age of majority.

> Neither of the parties in their brief discussed the child support guidelines and the record does not reflect that at trial they attempted to determine the net income of either of the parties in order to determine the correct amount of support. The trial court in the decree did not find the amount of support based upon the guidelines nor did it make written findings that the application of the guidelines would be unjust or inappropriate as required in Tennessee Code Annotated section 35-6-101(e)(1). Therefore, this case must be remanded to the trial court for determination of the amount of child support based upon the [sic] child support guidelines or if they are not appropriate, written findings by the trial court as required by the statute.

*Malone*, 842 S.W.2d at 624-25.

In the instant case, on remand the trial court should make findings regarding the Husband's net income and the appropriate amount of child support under the guidelines based upon the Husband's net income and should the trial court deviate from the guidelines, the basis for such deviation.

The defendant's next issue is: "The trial court erred in requiring the Husband to pay any and all of the Wife's medical expenses which are not otherwise covered by medical insurance until her death."

10

The trial court ordered the Husband to pay the Wife's future medical expenses which are not covered by either TennCare or other insurance which might be obtained by the Wife. It is Husband's contention that the trial court erred because its authority is limited to requiring a spouse to pay premiums of insurance for the disadvantaged spouse as set forth in Tennessee Code Annotated section 36-5-101(f).

The trial court found that the Husband had "shirked" his responsibility to provide medical insurance for his family during the marriage and "now it's become a big problem because the Wife is probably uninsurable other than TennCare." The Wife argues and we agree that the Husband is seeking to benefit from his failure to adequately provide health insurance for the Wife during marriage. Under the Husband's argument the trial court would have been authorized to order him to maintain insurance for the Wife if he had had insurance on her but because the Wife is uninsurable she must be left to fend for herself. We are of the opinion that the law is clear that the trial court was authorized to order the payment of uncovered medical expenses of the Wife by the Husband. *See Green v. Green*, 8 T.A.M. 10-19 (Tenn. App. 1983).

In *Clift v. Clift*, 4 T.A.M. 33-27 (Tenn. App. 1979) the trial court ordered the husband to pay the medical expenses incurred by the wife for her treatment of alcoholism and to pay for the wife's future medical expenses, particularly her expenses related to recovery from alcoholism. On appeal, the husband argued that such an order was contrary to public policy and was so indefinite as to be surplusage and unenforceable. This court affirmed the trial judge's decision stating "the statute gives a trial court broad power in both setting and modifying the amount and type of award necessary for the particular facts involved.

11

This statutory power may be used at the trial court's discretion, and the use of that power will not be interfered with by this court unless there is a showing of abuse. *Id.* at 3.

Defendant's fifth issue is: "The trial court erred in awarding the Wife additional alimony in solido of $9,700.00 to offset her attorney's fees."

The Husband was ordered to pay $9,700.00 as reasonable attorney's fees which Wife incurred in the trial of this case.

It is the Husband's insistence that the Wife should be required to pay her attorney's fees by liquidating her separate property, which was comprised of some jewelry given to her by the Husband during their marriage, and her investment account between $10,000.00 and $15,000.00 which was given to her by her mother. While it is not appropriate to award attorney's fees when the spouse is able to pay such fees, either from her separate assets or from funds awarded to the spouse by way of property division or alimony, if the financial provisions made for the disadvantaged spouse by way of alimony do not include the means out of which counsel fees can be reasonably be paid, the trial court is authorized to grant to the disadvantaged spouse additional alimony for the purpose of enabling her to pay her attorney. *Palmer v. Palmer*, 562 S.W.2d 833, 839 (Tenn. App. 1977).

The award of attorney's fees lies within the discretion of the trial court and this court "will decline to disturb the trial court's decision regarding attorney's fees unless the decision is not supported by a preponderance of the evidence." *Luna v. Luna,* 718 S.W.2d 673, 676 (Tenn. App. 1986). This court will not ordinarily interfere with the allowance of attorney's fees by the

12

trial court for services in the trial court unless it is readily apparent that an injustice has been perpetrated.

Here, the Wife had only meager assets and nothing in property division because the parties had no marital estate.

Under the facts in this record we are of the opinion that the evidence does not preponderate against the trial court's determination that the Wife is entitled to additional alimony of $9,700.00 to "offset her attorney's fees."

We have considered the plaintiff's request that she be awarded her attorney's fees incurred in this appeal. On remand, the trial court shall conduct a hearing regarding whether the plaintiff is entitled to additional alimony for attorney's fees on this appeal and if so the reasonable amount.

The judgment of the trial court is affirmed as modified, and the cause is remanded to the trial court for further proceedings in conformity with this opinion.

Costs on appeal are taxed to the defendant/appellant.

_____
SAMUEL L. LEWIS, JUDGE


CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
BEN H. CANTRELL, JUDGE

13