IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 18, 2003 Session

## MOHAMMAD RAFIEETARY v. MARYAM KHOSHROO RAFIEETARY

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-003821-01     John R. McCarroll, Jr., Judge**

—

**No. W2003-00121-COA-R3-CV - Filed April 29, 2004**

—

This case concerns issues of alimony, child support, and dependency exemptions, arising from the divorce of Husband and Wife. Following a hearing, the trial court awarded Wife rehabilitative alimony, ordered Husband to pay 80% of Child's uninsured medical expenses over $500, awarded each party the dependency exemption for Child on alternating years, and ordered Husband to pay for Child's violin lessons and Boy Scout expenses. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Kathleen D. Norfleet, J. Michael Fletcher, Steven R. Walker, Memphis, TN, for Appellant

Stevan L. Black, John C. Ryland, Vickie Hardy Jones, Memphis, TN, for Appellee

**OPINION**

**Facts and Procedural History**

Mohammad Rafieetary ("Husband") and Maryam Rafieetary ("Wife") were both born in Iran, where they were married in 1985. For approximately eight years prior to the marriage, however, Husband had been a student in the United States. At the time of the marriage, Husband was in optometry school at the University of Missouri in St. Louis. Wife moved with Husband to St. Louis, where the parties resided until Husband graduated from optometry school in 1988. While in St. Louis, Wife took English and other classes at the University of Missouri in pursuit of an undergraduate degree, which she did not complete at the time.

Upon Husband's graduation in 1988, the parties moved to Memphis so that Husband could enroll in a post-doctorate residency program at the Southern College of Optometry ("SCO"). Following completion of his residency program, Husband accepted a job at SCO, where he worked for six years. Husband then left SCO to work for his current employer, the Charles Retina Institute, in Memphis. During this time, Wife continued to take classes, first at the University of Memphis and then at the University of Tennessee in Memphis, where she graduated with a degree in medical technology. Wife then took a job as a medical technologist at Methodist Hospital in Germantown.

In August 1990, while still a student, Wife gave birth to the parties' only child, Salar ("Child"). Both parents were active in the raising of Child, with Wife assuming many of the day-to-day responsibilities and Husband engaging in activities with Child such as Boy Scouts. The parties enrolled Child in private school at Briarcrest Christian School, which he still attends.

On June 21, 2001, Husband filed for divorce in the Circuit Court of Shelby County, alleging irreconcilable differences and inappropriate marital conduct. On October 30, 2001, Wife filed her answer and counter-complaint for divorce, also alleging irreconcilable differences and inappropriate marital conduct. The parties entered into an agreed Permanent Parenting Plan on December 7, 2001. Under the terms of the plan, neither parent was designated as the primary residential parent, and Husband enjoyed substantial residential time with his son. Although not required by the plan, Husband continued to pay all Child's expenses during this time, except the cost of food when Child stayed with Wife. These expenses included the cost of Boy Scout activities and violin lessons for Child.

On October 11, 2002 a final decree of divorce was entered, though the lower court reserved issues regarding custody, child support, and division of marital property for a later date. The trial court addressed these remaining issues in two hearings that took place on September 12 and November 6, 2002. Much of the evidence developed at these hearings dealt with the income and expenses of each party. Specifically, Husband indicated that he earned approximately $16,000 gross per month, while Wife testified that she grossed approximately $4,000 per month. Wife's monthly expenses proved to be a source of contention, with Husband questioning the accuracy of Wife's affidavit listing some $8,000 in monthly expenses.

At these hearings, the parties agreed on, and the court approved: (1) a division of the marital property awarding Wife 52.5% of the property and Husband 47.5%; (2) Husband paying $25,000 of Wife's attorney's fees; (3) Husband paying Wife $1,779 per month in child support; and (4) Husband paying for Child's private school expenses. However, several issues remained upon which the parties could not reach an agreement. The lower court ruled as follows on these issues: (1) Husband must pay for violin lessons and Boy Scout expenses for Child, in addition to child support; (2) Husband and Wife will alternate tax years taking the dependency exemption for Child; (3) the parties will split the first $500 in medical costs for Child in any given year, with the Husband paying 80% of any additional medical expenses; and (4) Husband will pay Wife $1,500 per month in rehabilitative alimony for a period of five years. On December 16, 2002, the lower court entered an

amended final decree of divorce reflecting its rulings on the issues listed above. Husband then timely filed this appeal, raising the following issues for our consideration:

I.   Whether the trial court erred in awarding rehabilitative alimony.
    A.   Whether the trial court erred by foreclosing Husband from presenting proof that Wife had no need for rehabilitative alimony.
    B.   Whether the trial court erred in determining Wife had a need for rehabilitative alimony.

II.  Whether the trial court erred in requiring Husband to pay the cost of Boy Scout expenses and violin lessons for Child.

III. Whether the trial court erred in requiring Husband to pay 80% of Child's uninsured medical expenses over $500.00.

IV.  Whether the trial court erred in determining that the dependency exemption for federal income taxes could only be claimed by Husband in alternate years, rather than every year.

Wife, as Appellee, raises one additional issue on appeal:

V.   Whether Husband should be required to pay Wife's attorney's fees incurred in defending the instant appeal.

**Standard of Review**

When this Court reviews the findings of fact by a trial court sitting without a jury, such review is *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002); *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). Further, we employ an abuse of discretion standard when reviewing a trial court's award of spousal support. *Walker v. Walker*, No. E2001-01759-COA-R3-CV, 2002 WL 1063948, at *2 (Tenn. Ct. App. May 29, 2002) (citing *Robertson v. Robertson*, No. E200-01698-SC-R11-CV, 2002 Tenn. LEXIS 172, at *11 (Tenn. Apr. 4, 2002)). Likewise, we will not disturb a trial court's determination regarding dependency exemptions absent a showing that the lower court abused its discretion. *Barabas v. Rogers*, 868 S.W.2d 283, 289 (Tenn. Ct. App. 1993). Finally, this Court affords the trial court deference in matters of child support and reviews such issues under an abuse of discretion standard. *Hanselman v. Hanselman*, No. M1998-00919-COA-R3-CV, 2001 Tenn. App. LEXIS 166, at *4 (Tenn. Ct. App. Mar. 15, 2001). "This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the trial court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *Id*. (citing *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)).

**Spousal Support**

In his first issue on appeal, Husband challenges the lower court's award of rehabilitative alimony to Wife. He premises his challenge on two different grounds. First, Husband maintains that the lower court impermissibly foreclosed his cross-examination of Wife, thereby preventing him from showing that Wife has no need for alimony. Next, he simply argues that the lower court abused its discretion in awarding Wife $1,500 per month for five years. We will address each argument in turn.

## Foreclosure of Cross-Examination

Husband maintains that the trial court denied him the opportunity to conduct a complete cross-examination of Wife at the November 6, 2002 hearing and, as a result, he was unable to fully develop his evidence regarding Wife's need for alimony. Specifically, Husband argues that he attempted to question Wife regarding certain bank statements that demonstrated lower monthly expenses than those Wife provided in her Rule 14(c) affidavit and that the lower court prevented this questioning. Husband points to the following exchanges in support of his contention:

> HUSBAND'S COUNSEL: . . . So what I'm examining [Wife] on is what her needs are, Your Honor. And Your Honor, that's the only way I know how to get to it [by using the bank statements] and to finally let Your Honor go ahead and make your decision.

> WIFE'S COUNSEL: . . . I know where counsel is going with this. He is going to try to utilize [Wife's bank statement] to show what her expenses have been -

> THE COURT: I don't want to get into that. We have 30 minutes left this afternoon, you know. I don't need to get into a discussion about those kinds of things. I do need to know what the parties are asking for. What is his position? What is he saying he thinks about paying her?
>         . . . .

> THE COURT: Okay. All right. **Well, we will go ahead and you put on whatever proof you are going to put on**. And I don't know what agreements regarding attorney fees are but at the end of the day, Dr. Rafieetary is probably going to end up paying more attorney fees than he has agreed to right now.

> HUSBAND'S COUNSEL: Your Honor, that has a rather chilling effect on my cross-examination, perhaps.

> THE COURT: I'm just telling you the way the world works.

(emphasis added). Husband maintains that, in this last exchange, the trial court effectively foreclosed any further cross-examination by telling counsel that additional questions could lead to a greater award of attorney's fees for Wife. We disagree. While it is true the trial court raised the

possibility of additional attorney's fees as a consequence of continued cross-examination, the lower court never made any ruling that forbade Husband's counsel from continuing. Indeed, the lower court's ruling, as emphasized above, was that counsel could "put on whatever proof you are going to put on." The burden then fell to counsel to conduct the cross-examination and to then appeal any award of attorney's fees thought to be excessive. In sum, though the trial court may have seemed less than enthused regarding the proposed route of cross-examination, it ruled in Husband's favor on the issue. Husband cannot thereafter challenge the ruling in his favor simply because he failed to act upon it.

**Award of Rehabilitative Alimony**

We have held that "[t]rial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration." *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998). "Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Id*. As such, we generally decline to alter a trial court's determination regarding spousal support unless the lower court abused its discretion. *Walker v. Walker*, No. E2001-01759-COA-R3-CV, 2002 WL 1063948, at *2 (Tenn. Ct. App. May 29, 2002) (citing *Robertson v. Robertson*, No. E2000-01698-SC-R11-CV, 2002 Tenn. LEXIS 172, at *11 (Tenn. Apr. 4, 2002)).

Tenn. Code Ann. § 36-5-101(d)(1) (2001) provides the relevant factors to be considered by a trial court when determining awards of alimony:

> In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

While a trial court must consider each of these factors in making its determination, need and the ability to pay are the critical factors. *Anderton v. Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998).

Husband argues that the lower court erred in granting Wife $1,500 per month for five years in rehabilitative alimony. He claims that Wife has no need for this much support and that she has no need for rehabilitation. We are not persuaded by Husband's argument. When we review the record in light of the relevant statutory factors, we cannot say that the trial court abused its discretion in either the amount, duration, or type of alimony awarded. Evidence was presented that Husband's income is four times that of Wife; that Husband has more education and a greater long-term earning capacity; that Wife suffers from chronic back pain that sometimes makes working for extended periods difficult; that Wife is the custodian of the parties' minor child; that Wife has made contributions to the seventeen-year marriage as both wage earner and homemaker; and that Wife has need of support to meet her monthly expenses. Considering this evidence, the trial court was within its discretion to award Wife $1,500 for five years. Husband argues that Wife is not entitled to rehabilitative alimony, because there is no indication she intends to seek additional job training or education, and, thus, there is nothing to rehabilitate. We note, however, that rehabilitative alimony "may also provide temporary income to support the disadvantaged spouse during the post-divorce economic adjustment." *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002) (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 360-61 (Tenn. 2000)). Consequently, we do not find that the lower court erred in classifying Wife's alimony in this case as "rehabilitative." In light of the foregoing, we affirm the lower court's award of spousal support to Wife.

**Violin Lessons and Boy Scout Expenses**

In his next issue on appeal, Husband challenges the lower court's order obligating Husband to pay for Child's violin lessons and Boy Scout expenses, in addition to child support payments of $1,779 per month. Husband argues that the $1,779 payment reflects the amount mandated by the Child Support Guidelines and that these miscellaneous expenses constitute an upward deviation. He maintains that the trial court erred in ordering the upward deviation because it failed to make written findings rebutting the presumption in favor of the guideline amount, as required by Tenn. Code Ann. § 36-5-101(e)(1). We agree.

We previously addressed this issue in *High v. High*, No. W2001-01558-COA-R3-CV, 2003 WL 21643353, at *1 (Tenn. Ct. App. July 8, 2003). In *High*, the father was ordered by the trial court to pay the guideline amount in monthly child support, as well as the costs of summer camp for his minor children. *Id*. He challenged his obligation to pay for summer camp, arguing that it constituted an upward deviation and that the trial court had failed to make a written finding that "application of the . . . guidelines would be unjust or inappropriate," as required for an upward deviation. *Id*. at *7 (quoting Tenn. Code Ann. § 36-5-101(e)(1); Tenn. Comp. R. & Regs. 1240-2-4-.01(3)). As we conducted our analysis, we noted that the guidelines provide for mandatory upward deviations in the case of "[e]xtraordinary educational expenses and extraordinary medical expenses not covered by insurance." *Id*. (quoting Tenn. Comp. R. & Regs. 1240-2-4-.04-(1)(c)). We found, however, that the summer camp expenses did not constitute "extraordinary educational expenses," and, therefore, no mandatory upward deviation was appropriate.

Instead, we found that the summer camp expenses represented another class of expenses contemplated by the guidelines, "other extraordinary expenses." *Id*. at *8. "Other extraordinary expenses" are not expenses mandated by the guidelines to be borne by the child support obligor, unlike "extraordinary educational expenses and extraordinary medical expenses not covered by insurance." *Id*. (citing Tenn. Comp. R. & Regs. 1240-2-4-.04(d)). To the contrary, it is assumed that the obligor will not bear these expenses, unless the trial court finds that "equity requires it." *Id*. (citing Tenn. Comp. R. & Regs. 1240-2-4-.04(d)). Accordingly, we held:

> [W]hen an obligor parent is ordered to pay some or all of such expenses, the result is a deviation from the Guidelines. Such a deviation, in turn, triggers the requirement of "a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or the equity between the parties."

*Id.* (citations omitted).[1]  In the present case, the violin lessons and Boy Scout expenses each constitute "other extraordinary expenses." As such, imposing these expenses on Husband represents an upward deviation from the presumed guideline award. The lower court, consequently, erred when it failed to make "a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or the equity between the parties." We, therefore, reverse and remand on this issue, with instructions that the lower court quantify these additional expenses and make a determination regarding upward deviation, supported by written findings where appropriate.

## Child's Uninsured Medical Costs

In its decree, the trial court ordered Husband to pay 80% of Child's uninsured medical costs over $500. Husband contests this ruling, arguing that both parties bear an equal and joint obligation to support their child. Having reviewed the relevant authority, we cannot find that the trial court abused its discretion in this matter. As we acknowledged in *Rice v. Rice*, No. M1998-00973-COA-R3-CV, 2001 Tenn. App. LEXIS 509, at *9 (Tenn. Ct. App. July 19, 2001), "Tenn Code Ann. § 36-5-101(f)(1) . . . specifically empowers trial courts to order a parent to be responsible for [up to] all of a child's uncovered medical expenses." In *Rice*, this Court found that a difference of $25,700 in the parents' annual income was sufficient to justify the trial court's decision to hold the father responsible for *all* the child's uncovered medical expenses. *Id.* at *9-10. In the present case, Husband's annual income exceeds Wife's by more than $100,000. Accordingly, we find that the trial court did not err in ordering Husband to cover 80% of Child's uninsured medical costs.

## Dependency Exemption

In his final issue on appeal, Husband challenges the trial court's decision to have the parties alternate years in which they use the dependency tax exemption for Child. Specifically, Husband maintains that he should have been awarded the exemption outright, as he would reap substantially more tax benefit than Wife due to his significantly higher income. Husband points our attention to the case of *Travis v. Travis*, No. E2000-01043-COA-R3-CV, 2001 Tenn. App. LEXIS 175, at *1 (Tenn. Ct. App. Mar. 16, 2001), in which this Court affirmed the trial court's award of the dependency exemption to the father, the non-custodial parent. We affirmed the trial court's award on two grounds. *Id.* at *13-14. First, the father earned approximately $34,000 annually, while the mother earned less than $4,000 in a year. *Id.* at *13. We found that the exemption would be of great benefit to the father and of relatively little use to the mother. *Id.* Next, we noted that the father was

---

[1]  In *High*, we continue our analysis regarding the relationship of "other extraordinary expenses" to the presumed guideline award. Our analysis suggests that these expenses do not constitute "child support," as contemplated by the child support guidelines, unless the expenses are quantified and added to the periodic "child support" payment ordered by the trial court. *High*, 2003 WL 21643353, at *9. If the expenses are not quantified and added to the "child support" payment, then the expenses do not represent an upward deviation in "child support," and the trial court is not obligated to make any specific findings. *Id.* It is critical to note, however, that this additional analysis is limited to the circumstances of the case, in which the parties entered into an *agreed* order regarding child support obligations. *Id.* at *9-10. As the parties in the present case did not enter into an agreed order, the additional analysis is inapposite.

"responsible for a significant portion of his children's expenses," voluntarily assuming other expenses with regard to his children in addition to his child support payments. *Id*. at \*14. Consequently, we held that "it seems to us that he should be allowed the dependency exemptions as a matter of equity." *Id*. In the present case, Husband argues that his significantly higher income, coupled with his assumption of many of Child's expenses, entitles him to use the dependency exemption every year.

As noted earlier, a trial court's decision regarding the allocation of dependency exemptions is discretionary and rests on the facts of the particular case. *Barabas v. Rogers*, 868 S.W.2d 283, 289 (Tenn. Ct. App. 1993). Having reviewed the facts of this case, we cannot say that the trial court abused its discretion in having the parties alternate use of the dependency exemption. The *Travis* decision is only partly instructive in the present case. Husband, like the father in *Travis*, does, indeed, bear many of Child's financial expenses. However, Wife earns a considerably higher income than the mother in *Travis*, nearly twelve times as much, and, as such, the dependency exemption is of much more use to Wife under these circumstances. As such, the lower court acted within its discretion by awarding each party use of the dependency exemption in alternating years.

### Attorney's Fees

In her only issue on appeal, Wife asks us to award her attorney's fees incurred in defending this appeal. She argues that she is entitled to attorney's fees on two bases. First, she maintains that she should be awarded her attorney's fees incurred on appeal as a form of alimony. She then argues, in the alternative, that attorney's fees are appropriate because of the frivolous nature of this appeal. We disagree with both grounds. Each case cited by Wife, regarding attorney's fees as a form of alimony, contemplates an award of attorney's fees for proceedings at the trial level. *See Houghland v. Houghland*, 844 S.W.2d 619 (Tenn. Ct. App. 1992); *Raskind v. Raskind*, 325 S.W.2d 617 (Tenn. Ct. App. 1959). In *Houghland*, after discussing the award of attorney's fees to wife at the trial level, we addressed wife's request for attorney's fees incurred due to her husband's appeal. *Houghland*, 844 S.W.2d at 623. We never considered awarding her fees incurred on appeal as a form of alimony. *Id*. Instead, we simply held that an award of attorney's fees is inappropriate where each party is partially successful on appeal. *Id*. We note that, as Husband was successful in one of his issues on appeal, our holding in *Houghland* actually disposes of Wife's second ground for attorney's fees, as well. Accordingly, we decline to award Wife her attorney's fees incurred as a result of this appeal.

**Conclusion**

For the foregoing reasons, we affirm the ruling of the trial court as to the issues of alimony, uninsured medical costs, and dependency exemptions. We reverse and remand for further proceedings consistent with this opinion on the issue of Child's violin lessons and Boy Scout expenses. Costs of this appeal are taxed equally to Appellant, Mohammad Rafieetary, and his surety, and to Appellee, Maryam Khoshroo Rafieetary, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE